HARRIS ET AL. *v.* HUMMELL.

(Decided March 18, 1935.)

*Mr. Henry E. Beebe,* for plaintiffs in error.
*Mr. Benjamin P. Pink,* for defendant in error.

HAMILTON, J.   Howard S. Hummell, defendant in error here, brought suit against Sadye Harris and others in the Municipal Court of Cincinnati to recover for personal injuries received by him, caused by an explosion in the basement of an apartment building owned by Sadye Harris.

The trial of the case resulted in judgment for Hummell.   On error to the Court of Common Pleas, that judgment was affirmed.   To that judgment of the Court of Common Pleas, affirming the judgment of the Municipal Court, error is prosecuted to this court.

At the trial of the case Hummell, the plaintiff, testified as follows:

"Q. Now, Mr. Hummell, what is your business?   A. I am in the rental business, real estate.

"Q. Mr. Hummell, prior to July 29, had you had any business relations with Louis Harris with reference to the real estate at 3433 Burnet Avenue?   A. Yes.

"Q. What was that relationship? A. He called me up and said he had a few apartments vacant.

"Q. With reference to what building? A. The one at 3433 Burnet Avenue.

"Q. Did he tell you how many apartments were vacant at 3433 Burnet Avenue? A. Two apartments were vacant.

"Q. What did you do following this, with reference to renting them for him.

"Mr. Beebe: I am objecting to this. We are here trying a negligence case. What he did in the matter of the contract relationship—

"The Court: Mr. Beebe it seems to me that if this person were a trespasser it would be entirely different.

"Mr. Beebe: I will withdraw the objection.

"Q. Now then, Mr. Hummell, after you had sent these tenants to see these apartments, did you notify Mr. Harris of this action? A. Yes.

"Q. What happened with reference to renting them? Did you rent them? A. I rented both apartments.

"Q. Now then, did Mr. Harris know of that? A. Yes.

"Q. Now then—

"The Court: What were the terms of those rentals?

"The Witness: $40.00 a month payable in advance.

"The Court: Was the money paid in advance?

"The Witness: Yes, I gave it to Mr. Harris.

"Q. Each month they would pay you the rent and then what would you do? A. Take the rent to Mr. Harris, to the Sixth Street store.

"Q. Now then, Mr. Hummell, tell the Court what happened on July 29, with reference to the property at 3433 Burnet Avenue. With reference to your going there and why you went there, just tell the Court. A. I received a telephone call from this lady, telling me that she has no hot water. I said, 'Well let your water

run'. She said, 'It has been running now for an hour and still I have no hot water.'

"Q. What happened after you had that conversation? A. I asked her if she called the janitor. She said that there was no janitor there. I said, 'I will be over there in a few minutes.' I got over there a half-hour later. There was no hot water. I asked her if she had a match. She gave me a couple of matches. The lights did not work.

"Q. You went down to where? A. To the foot of the stairs.

"Q. Now then, why were you going to the cellar? A. For the janitor.

"Q. Now then, after you got down to the foot of the steps what was the condition? A. No lights burning.

"Q. What did you do with reference to turning on the lights? A. There was no lights.

"Q. You mean to say they did not burn at all? A. Yes, I lit a match and the explosion occurred.

"Q. What happened to you then? A. My whole right hand was burned. The fact is it knocked me over against the stairs. I got so scared I ran upstairs as quick as I could.

"Q. Whose place did you run to? A. Miss Laycock's.

"Q. Mr. Hummell, after you got up to Miss Laycock's apartment what happened with reference to your suit? A. I showed her and I looked at my suit. It was burned. She immediately went to work and bathed my hand in oil. I said, 'Call a doctor, call him quickly, I can not stand this.'

"Q. Whom did you call? A. I called Dr. Litwin.

"Q. Where is his office? A. McMillan and Park Avenue.

"Q. Now then, after you called Dr. Litwin, did he come? A. He came about thirty minutes later.

"Q. What was the condition, with reference to your hand? A. All my fingers up to here (indicating) were burned.

"Q. What was your condition as to whether or not you were nervous or not? A. I was excited.

"Q. Tell the Court whether at that time you were suffering any pain? A. Before I got injured?

"Q. No. A. It hurt my hand; drove me crazy.

"Q. Now then, Mr. Hummell, when the doctor came what did he do? A. He immediately started wiping off the oil. He took an instrument and cut off the skin and opened the blisters, cutting it all around, eight or ten blisters, I presume. Then he asked me if I still had pain. I said, 'I can not stand it. Give me something to relieve it.' He said, 'There is nothing to do except opening up these blisters.' He put some kind of yellow salve on them.

"Q. Did he bandage it? A. Yes.

"Q. Now, Mr. Hummell, after the doctor left, how long did you stay in Miss Laycock's apartment? A. I stayed about an hour.

"Q. Before you left there where did you go, with reference to any part of the building at 3433 Burnet Avenue? A. I went down to see what caused this accident.

"Q. After that what did you do? What parts of the cellar did you go to? A. Afterwards I went into where the tanks are, the hot water heater or whatever they call them.

"Q. Did you smell any gas? Enough to suffocate you? A. Yes, the thing, the pilot; what do you call that?

"Q. Did you open that? A. I never touched it.

"Q. Could you see where this gas was coming from? A. It sizzled. Sizzled from the bottom of the heater.

"Q. What did you do with reference to calling Mr.

Harris? A. The next day I called him and told him about it.''

It is clear from this evidence of the plaintiff himself that he was a mere licensee. The law is: A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril.

From the recital of the evidence given by the plaintiff there is no case of wanton or wilful injury, or evidence that defendant had any knowledge that the plaintiff was in any danger.

It might be added that there is no evidence in the record of any prior knowledge of any defect, and it may well be doubted whether the record discloses any lack of ordinary care, were that rule to be applied. Moreover, the weight of the evidence is that the plaintiff below was guilty of contributory negligence. He undertook, without authority, to investigate. Any reasonable man would expect under the circumstances to find a defect in the water heater. He borrowed a match, went into the basement, and struck the match, apparently to ascertain whether gas was escaping. Of course, this might be a conclusion for the jury, but under the facts of the case, the presumption of contributory negligence would arise.

Again, there is no proof that the failure of the water heater to heat the water produced the gas which apparently exploded, causing the injury. As stated in the case of *St. Marys Gas Co.* v. *Brodbeck, Admr.,* 114 Ohio St., 423, at 427, 151 N. E., 323:

''It is possible that it might have been either natural gas, or sewer gas, or gasoline fumes.''

Plaintiff testified that after the explosion he went down to the basement to investigate and that gas ''sizzled'' from the bottom of the heater. This, how-

ever, does not prove the cause of the explosion, nor does it show knowledge or lack of inspection on the part of the landlord. This is not a *res ipsa* case.

The case would have to be reversed for lack of proof under the liability for ordinary care, but since we have the direct question of liability to a licensee, which requires wanton and wilful negligence, and there being no evidence as to this the judgment will be reversed and final judgment entered in this court for the plaintiffs in error.

*Judgment reversed and judgment for plaintiffs in error.*

Ross, P. J., and Matthews, J., concur.